SUCCESSION

OF

W. D. WATLINGTON

7310

NO. 7310

CHARLES F. CLAIBORNE, JUDGE.

May 20th. 1918.

7310

145

CHARLES F. CLAIBORNE, JUDGE.

The question in this case is whether the widow's and minor's homestead under Article 3252 (3219) of the Civil Code primes the chattel mortgage creditor under Act 151 of 1916.

Taking advantage of this Act of 1916 the deceased, W. D. Watlington, on June 30th. 1917, borrowed from the Employees Company $300.00 payable ninety days after date with eight per cent interest, and, to secure the reimbursement of this sum, granted a mortgage on his automobile.

Watlington died on July 25th. 1917, and his Succession was opened.

His widow was appointed administratrix. He left nothing but movables, including the automobile mortgaged to ~~Watlington~~. All the property left by him was ordered sold to pay debts, and was sold. The automobile sold for $400.00; the entire proceeds of sale were $714.00. The administratrix filed an account. The privileged claims consisted of costs of court, costs of sale, expenses of last illness, and attorney's fees. The widow was placed as a privileged creditor for the balance, $516.98, as widow in necessitous circumstances. The Employee's Company was placed upon the account as an ordinary creditor, with no prospect of being paid any part of its claim and as a "memorandum only". It opposed the account to the extent of asserting its superior rank as a creditor over the widow upon the proceeds of sale of the automobile and asked to be paid the full amount of its loan, say $300.00, by preference to the widow.

There was judgment in favor of the Employee's Company and the widow has appealed.

Act 151 of 1916 p 371 is entitled: An Act, to

146

grant the right to mortgage the following property: x x x all kinds of vehicles, and the equipment, accessories, and parts thereunto belonging x x x; to provide for the regulation, effect and enforcement of such right of mortgage. x x x"

Section 4 "Be it further enacted, etc: That every mortgage shall be a lien on the property mortgaged from the time same is recorded, which recordation shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto".

Section 11. Be it further enacted, etc: "That all laws or parts of laws in conflict herewith are hereby repealed &c".

§ 7 of Article 3252 (3219) of the Civil Code, prior to the amendment of 1917, was an exact reproduction of Act 255 of 1852 p 171 and read as follows:

"Whenever the widow or minor children of a deceased person shall be left in necessitous circumstances and not possess in their own right property to the amount of one thousand dollars, the widow or the legal representatives of the children shall be entitled to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of the property owned by them, or either of them, in their own right, will make up the sum of one thousand dollars, and which amount shall be paid in preference to all other debts, except those for the vendor's privilege and expenses incurred in selling the property. &c &c".

There can be no doubt that the letter of the chattel mortgage act confers a right which "shall be superior in rank to any privilege or lien arising subsequently thereto."

There can be no doubt either, that the widow's homestead arose "subsequently thereto", that is, only at the death of the husband. It did not arise prior thereto; for if the Employee's Company had foreclosed, prior to the death of the husband, there would have been no widow, hence no widow's homestead. It arose at the moment of the husband's

147

death. 10A 451; 13A 352; 18A 39; 24A 491; 27A 99; 29A 703; 30A 670; 32A 18, 459; 34A 820; 1068.

In order to grant a superiority to the widow's homestead it would be necessary for the Court to add a few words to the Act of 1916, so as to make it confer a right "superior in rank to any privilege or lien arising subsequently thereto except the widow's homestead." But the legislator has made no such exception, neither can we.

But the learned counsel for the widow argues that the legislator evidently meant to give the chattel mortgage priority only over subsequent privileges arising from conventional obligations and not over privileges created by law exclusively. But to sustain his contention we would have to interpose this word "conventional" which does not exist in the law. The power of Courts to add words or phrases to the law must be exercised sparingly and only to carry out the evident intention of the law. We do not believe that this law justifies the exercise of this power.

If the legislature had in mind "conventional" privileges only, it would have said so; if it intended to except the widow's homestead it would have mentioned it. We have no more right to except the widow's homestead, than we would have to except any other privilege created by law and arising subsequent to the chattel mortgage act.

If it had been the intention of the Legislature to make the privilege created by the mortgage superior only to subsequent "conventional" privileges, it would have been unnecessary to so state, as it would have been a natural consequence. When the act stated in so many words, that the mortgage should be superior to any subsequently arising privilege we must presume that the legislators meant to give the word some force.

But we believe that the legislature did intend to do exactly what it said, that is, to give chattel mortgages "superiority in rank over any privilege or lien arising subsequently thereto". The chattel mortgage act was passed with a.

148

view of enabling certain persons of small means, owning movable property of comparatively little value to borrow money and to secure the reimbursement of it by a mortgage upon their movable property. The only security was the movable property. If that did not satisfy the debt, the creditor had no other recourse. It was therefore necessary to make the mortgage as perfect a security as possible. The first security was a privilege "superior in rank to any privilege arising subsequently thereto". Section 5 of the act prohibited the mortgagor from moving the property from the parish where the mortgage was given without the written consent of the mortgagee; and it was unlawful for a resident of any parish to purchase movables from a non-resident without an affidavit that there was nothing due on the property. Section 8 branded a violation of the provisions of the act as a misdemeanor and punished the same by a fine not exceeding $500.00 and imprisonment not exceeding twelve months, or both, at the discretion of the court. It was also made an offense for any one to injure, destroy, or conceal any mortgaged property, or to execute a release or satisfaction of the mortgage without being the owner of it, or to give a mortgage without disclosing the existence of a previous mortgage. It is impossible to conceive that the legislature had intended to give only a second place to a mortgage which it had otherwise surrounded by such penal sanctions. To construe the act in such a manner as to make the privilege conferred by it take a rank inferior to privileges created by law alone such as the widow's homestead would deprive the act of its efficacy as an absolute security and deter small loans based upon movables of small value, and thus, in a measure, destroy one of the objects of the law.

The homestead law of 1852 must be strictly construed. 11A 67; 29A 65; 31A 36.

But it is contended on behalf of the widow that the Article 3252 of the Civil Code has been amended by Act 17 of 1917 adopted July 25th. 1917 and promulgated July 30th. 1917; and that by this amendment the widow's homestead "shall be paid

149

in preference to all other debts, except those secured by the vendor's privilege, conventional mortgages, and expenses incurred in selling the property; provided that any such conventional mortgage or mortgages shall represent money actually loaned for not less than one year on the property described therein at not exceeding six per cent per annum for interest, discount, and charges", and that inasmuch as the Employee's Company's loan was payable at *90 days* from *date* with *8%* per cent per annum interest, it was not superior to the widow's homestead.

This amendatory law cannot have a retroactive effect so as to control a mortgage granted June 30th. 1917 prior to its passage. C. C. 8. It has been decided that the original homestead act of 1852 did not affect mortgages executed prior to its passage. 10A 509; 11A 674; 12A 538, 553; 20A 244.

It is therefore ordered that the judgment appealed from be affirmed.

May 20th. 1918.